United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Kareen Nahas, et al., | NO. C 03-05057 JW |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| City of Mountain View, et al., | |
| Defendants. | |

## I. INTRODUCTION

The plaintiffs ("Plaintiffs") in this case are Big Sky Entertainment, Inc. ("Big Sky") and Kareem Nahas and Andrew Nahas, shareholders in Big Sky. The defendants ("Defendants") are the City of Mountain View ("the City") and Whitney McNair ("McNair"), the City's Zoning Administrator, along with Does 1-50. In 2001, Plaintiffs purchased The Limelight, a nightclub in downtown Mountain View. Plaintiffs' lawsuit arises out of the imposition of new permit conditions upon The Limelight, which allegedly put it out of business. Plaintiffs assert eight claims against Defendants: (1) violation of substantive due process and equal protection rights, (2) inverse condemnation/takings, (3) violation of procedural due process rights, (4) violation of the right to free speech and the right to petition, (5) estoppel, (6) intentional interference with business relations, (7) negligent interference with business relations, and (8) unfair competition. Defendants now move for a judgment on the pleadings. (See Defendants' Notice of Motion and Motion on Judgment of the Pleadings [sic] to the First Amended Complaint, Docket Item No. 65.) For the reasons set forth below, the Court GRANTS Defendants' motion in part and DENIES it in part.

## II.  BACKGROUND

In December 2001, Plaintiffs purchased The Limelight, a nightclub on Castro Street in downtown Mountain View.  (First Amended Complaint, hereinafter "FAC," Docket Item No. 11, ¶ 10.)  At the time of the purchase, The Limelight served patrons 18 years old and older seven days a week, except select Sundays when it had "youth nights" for patrons between ages 14 and 17.  (FAC ¶ 10.)  At that time, The Limelight's Community/Provisional Use Permit did not restrict hours of operation or patrons' ages.  (FAC ¶ 12.)  Prior to their purchase, Plaintiffs met with the City and The Limelight's then owner "to learn of any issues The City might have with the club's operations."  (FAC ¶ 13.)  No age or hours restrictions were mentioned, and Plaintiffs were told that "there were no problems with the then current operations of the Limelight."  (FAC ¶ 13.)  As a result, Plaintiffs believed that, if they purchased The Limelight, they could continue operating it under the same conditions.  (FAC ¶ 14.)  In addition to purchasing the nightclub, Plaintiffs executed a 10-year lease for the property, making them responsible for rent and property taxes totaling more than $2.5 million.  (FAC ¶ 15.)

From the end of 2001 through the middle of 2002, Plaintiffs made no significant changes to The Limelight.  (FAC ¶ 14.)  In mid-2002, a nearby resident began complaining to the City's Zoning Administrator, Defendant McNair, about The Limelight's noise and about disruptive conduct of people in the public parking lot adjacent to The Limelight.  (FAC ¶ 16.)  Additionally, the City itself complained that The Limelight's advertising materials, which contained images of scantily clad women, "did not promote a 'family friendly' environment."  (FAC ¶ 16.)  Around October 2002, McNair imposed additional conditions upon The Limelight, requiring its patrons to be 21 years old or older, eliminating its patrons' "in-and-out" privileges, and restricting its evening operations to Thursday, Friday, and Saturday.  (FAC ¶ 17.)  There was no evidence, however, that the allegedly disruptive people in the parking lot were in fact patrons of The Limelight or that they were under 21

years old.[1]  (FAC ¶ 17.)

Plaintiffs appealed these additional conditions.  (FAC ¶ 18.)  The City Council heard Plaintiffs' appeal on December 10, 2002.  (FAC ¶ 18.)  At this hearing "Plaintiffs were [initially] only allowed ten minutes to speak.  Thereafter, plaintiffs were only allowed three minutes each to speak." (FAC ¶ 18.)  Plaintiffs offered to place security guards in the parking lot, provide the City Council with a sound report, and soundproof the building.  (FAC ¶ 18.)  Despite these accommodations and despite Plaintiffs' statements that the additional conditions would cause The Limelight to go out of business, the City upheld the additional conditions and set a further hearing for January 22, 2003. (FAC ¶ 18.)

After the December hearing, Plaintiffs served the City attorney with a petition for writ of mandamus seeking to stay enforcement of the new conditions.  (FAC ¶ 19.)  The City attorney asked Plaintiffs to try to resolve the matter without litigation and agreed to stay enforcement until the end of the year to allow some time for negotiations.  (FAC ¶ 19.)  During these negotiations, the parties discussed the possibility of finding a new buyer for The Limelight.  (FAC ¶ 20.)  No buyers, however, were interested in The Limelight under the new conditions.  (FAC ¶ 20.)  Eventually, Plaintiffs found a potential buyer, who was led by the City to believe that the new conditions would be rescinded. (FAC ¶ 21.)  The potential buyer made an offer and escrow opened but, in April 2003, McNair refused to rescind the new conditions.  (FAC ¶ 22.)  Instead, McNair imposed yet additional costly conditions; for example, McNair required the club to close at 1:00 a.m. instead of 2:00 a.m.  (FAC ¶ 22.)  Consequently, the buyer decided not to finalize the purchase of The Limelight.  (FAC ¶ 23.) Plaintiffs have been unable to locate another buyer.  (FAC ¶ 23.)

Plaintiffs have continued to make efforts to resolve their dispute with the City.  (FAC ¶¶ 24-25.)  At a meeting with the City on May 12, 2003, the City expressed concerns about the content of Plaintiffs' advertising material and the disruptiveness of the people in the parking lot.  (FAC ¶ 25.)

---

[1] Notably, the parking lot that adjoins The Limelight also adjoins several other businesses. (FAC ¶ 16.)

The City suggested that "the property would serve the community better as a restaurant." (FAC ¶ 25.) Plaintiffs submitted a report to the City, which sought to address the City's concerns by proposing additional security, sound proofing, etc. (FAC ¶ 26.) Plaintiffs agreed to virtually all of the City's new conditions. (FAC ¶ 26.) Plaintiffs asked, however, that The Limelight be allowed to continue serving patrons 18 years old and older, to continue staying open until 2 a.m., and to continue having "youth nights" on Sundays. (FAC ¶ 26.) Plaintiffs suggested that these allowances be made for a probationary period during which Plaintiffs would prove that they could operate The Limelight without disturbances. (FAC ¶ 26.) Despite Plaintiffs' reiteration that imposition of all the new conditions would put The Limelight out of business, McNair upheld them. (FAC ¶¶ 26-27.) Although it was irrelevant, McNair attached a copy of the Petition for Writ of Mandate that Plaintiffs earlier served on the City attorney. (FAC ¶ 27.)

At a final hearing on May 27, 2003, the City upheld the new conditions. (FAC ¶ 28.) Plaintiffs then operated The Limelight in compliance therewith. (FAC ¶ 29.) However, the club lost most of its patrons and was "forced to close down in July, 2003." (FAC ¶ 29.)

Since February 2003, Plaintiffs have been unable to pay rent on the property and are now defendants in an unlawful detainer action. (FAC ¶ 30.) Additionally, Plaintiffs allegedly have suffered "injury to their business goodwill and reputation" and loss of business opportunity. (FAC ¶¶ 31-34.) Plaintiffs allege that subsequent attempts to open a nightclub on a property in Burlingame, California, have been thwarted because the Mountain View City Council persuaded Burlingame that Plaintiffs did not properly follow the conditions of their permit. (FAC ¶¶ 31-34.) Allegedly, the landlord of the Burlingame property is suing Plaintiffs as a result. (FAC ¶ 35.)

### III. STANDARDS

Defendants' motion for judgment on the pleadings is based on FED. R. CIV. P. 12(c)) (hereinafter "Rule 12(c)"). The standard applied to a motion for judgment on the pleadings is similar to that applied to a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). Moran v. Peralta Community College Dist., 825 F. Supp. 891, 893 (N.D. Cal. 1993) (citing Miller v. Indiana Hosp.,

4

562 F. Supp. 1259, 1266 (W.D. Pa. 1983)). In reviewing a motion under Rule 12(c)), the court must assume that the facts alleged by the nonmoving party are true and must construe all inferences drawn from those facts in favor of the nonmoving party. General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989). If the nonmoving party cannot prevail under those conditions, the motion should be granted. The court need not assume the truth of legal conclusions in the complaint merely because they take the form of factual allegations. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

"If . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(c)).

"Although Rule 12(c)) does not expressly authorize 'partial' judgments, neither does it bar them, and it is common practice to apply Rule 12(c)) to individual causes of action. Courts have discretion to grant leave to amend in conjunction with 12(c)) motions." Moran, 825 F. Supp. at 893 (citing Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979)).

## IV. DISCUSSION

**A. Exhaustion of State Administrative Remedies Before Bringing Claims Under § 1983**

Plaintiffs assert their First, Second, Third, and Fourth Claims pursuant to 42 U.S.C. § 1983. Defendants argue that Plaintiffs' failure to exhaust their state administrative remedies--namely, their failure to file a writ of mandate--precludes them from bringing claims under § 1983. (Defendants' Reply to Opposition to Motion for Judgment on the Pleadings, Docket Item No. 81, at 2:1-3:16.) The Court rejects Defendants' argument because a writ of mandate is not an administrative remedy.

Writs of mandamus, including administrative mandamus, are judicial remedies. The California Court of Appeal has "noted the confusion into which courts have frequently fallen by mislabeling a writ of administrative mandamus as an administrative remedy when it is in fact a judicial one." Joel v. Valley Surgical Center, 68 Cal. App. 4th 360, 370 (1998) (citing Knickerbocker v. City of Stockton, 199 Cal. App. 3d 235, 241-42 (1988)); see also Southwestern Bell Tel. Co. v. State of

Oklahoma, 303 U.S. 206, 211 (1938); Honey v. Distelrath, 195 F.3d 531, 533 (9th Cir. 1999); In re Charge of Judicial Misconduct, 700 F.2d 1391, 1391-92 (9th Cir. 1983). Defendants' argument fails for reasons articulated in Knickerbocker: "[T]he *judicial* review of an agency determination can in no way be considered part of the *administrative* process which must be exhausted before a subsequent judicial action may commence." Knickerbocker, 199 Cal. App. 3d at 240 (1988). Thus, "[w]hat defendants are really asserting is that plaintiff is barred because he failed to exhaust his *judicial* remedies." Id. However, "[i]t is well established that state judicial remedies need not be exhausted or invoked to perfect a federal cause of action under the Civil Rights Act, § 1983." Canton v. Spokane School Dist. No. 81, 498 F.2d 840, 844 (9th Cir. 1974).

Therefore, contrary to Defendants' argument, Plaintiffs' failure to file the writ of mandate does not preclude their § 1983 claims.

**B. First Claim: Substantive Due Process and Equal Protection**

**1. Substantive Due Process**

Plaintiffs premise their substantive due process claim upon putative liberty interests in (1) owning and operating their business, (2) preserving their reputations, and (3) practicing their chosen profession, presumably entrepreneurship. Under the facts alleged in Plaintiffs' Complaint, the Court finds no violations of these purported liberty interests.

The Supreme Court has said:

> The Court's established method of substantive-due-process analysis has two primary features: First, the Court has regularly observed that the [Due Process] Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition. Second, the Court has required a 'careful description' of the asserted fundamental liberty interest.

Washington v. Glucksberg, 521 U.S. 702, 703 (1997) (citations omitted).

Plaintiffs fail, however, to show that either a liberty interest in (1) owning and operating a business or (2) preserving one's reputation is recognized as a substantive due process right under this standard. As Defendants cite, "the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited." Defendants' Memorandum of Points and

United States District Court
For the Northern District of California

Authorities in Support of Motion for Judgment on the Pleadings to First Amended Complaint, hereinafter "Defendants' Memorandum in Support of Motion," Docket Item No. 66, at 6:23-25; Armendariz v. Penman, 75 F.3d 1311, 1318-19 (9th Cir. 1996). Also, "[m]ere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 1-2 (2003) (referring to Paul v. Davis, 424 U.S. 693 (1976)). Therefore, Plaintiffs' claim will not be sustained based on any purported liberty interest in owning and operating a business or in preserving a reputation.

Under the facts alleged, Plaintiffs' claimed liberty interest in practicing their profession has not been violated. The Supreme Court "has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment . . . ." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). However, cases recognizing this right "all deal with a complete prohibition of their right to engage in a calling." Id. at 292. Plaintiffs' allegation of interference with a single business opportunity to open a nightclub in Burlingame is not a complete prohibition of the right to engage in a calling. Thus, no such substantive due process right exists on the facts of this case.

The Court finds Plaintiffs' substantive due process claim unsupportable. Therefore, the Court GRANTS Defendants' motion for judgment on the pleadings with respect to Plaintiffs' substantive due process claim.

**2. Equal Protection**

Although Plaintiffs do not explicitly allege an equal protection claim, under liberal pleading standards, such a claim may be inferred from their First Claim.

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Contrary to Plaintiffs' assertions (see Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings, hereinafter "Plaintiffs' Opposition," Docket Item

7

1 No. 79, at 10:18-25), Plaintiffs' Complaint fails to allege that Defendants treated them differently from
2 others who were similarly situated.

3 Therefore, the Court GRANTS Defendants' motion for judgment on the pleadings with respect
4 to Plaintiffs' equal protection claim with leave to amend.

**C. Second Claim: Takings**

Under federal and state law, private property "shall not be taken for public use, without just compensation." U.S. CONST. amend. V; CAL. CONST. art. I, §§ 7(a), 19.  Defendants argue that Plaintiffs cannot recover on their takings claim because there is an adequate state compensation procedure that Plaintiffs failed to use.  The Court accepts this argument.

"'If a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.'" Daniel v. County of Santa Barbara, 288 F.3d 375, 381 (9th Cir. 2002) (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985)). Plaintiffs fail to allege that they used procedures for and were denied just compensation.  Nor is there any indication, in Plaintiffs' Complaint or Opposition, that Plaintiffs viably could so allege.

Also, contrary to Plaintiffs' arguments, those state procedures are not inadequate.  As Defendants note (Defendants' Memorandum in Support of Motion at 8:8-9) and Plaintiffs fail to rebut, the Ninth Circuit accepts the adequacy of California's inverse condemnation compensation procedure: "We have expressly held that, post 1987, California's inverse condemnation procedures are adequate to address a regulatory takings claim.'" Carson Harbor Village, Ltd. v. City of Carson, 353 F.3d 824, 828 (9th Cir. 2004) (citing San Remo Hotel v. City & County of San Francisco, 145 F.3d 1095, 1102 (9th Cir. 1998)); see also Schnuck v. City of Santa Monica, 935 F.2d 171, 174 (9th Cir. 1991).

Plaintiffs argue that Defendants should be estopped from raising this defense of failure to pursue state remedies.  According to Plaintiffs, representations made by Defendants to the Plaintiffs about the possibility of settling their dispute led Plaintiffs to forego pursuing state remedies for mandamus and just compensation.  The Court finds this argument unconvincing because the alleged

8

representations were not made to the Court and were outside of litigation.

Generally, courts use three factors to determine whether judicial estoppel applies:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a *court* to accept that party's earlier position, so that *judicial* acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second *court* was misled.' A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (internal citations omitted) (emphases added). However, [t]he precise law of judicial estoppel is unclear in the Ninth Circuit."[2] Yanez v. U.S., 989 F.2d 323, 326 (9th Cir. 1993). Yet, "[a]s a general principle, the doctrine of judicial estoppel bars a party from takings inconsistent positions in the same litigation." Id. (citing Morris v. California, 966 F.2d 448 (9th Cir. 1991)). Where the party against whom estoppel is sought has made no prior representations to the court, judicial estoppel does not apply.[3] Therefore, Plaintiffs' judicial estoppel argument fails.

Plaintiffs also point out that "a facial takings claim cannot be unripe for lack of exhaustion of state remedies where the governmental action in question does not substantially advance legitimate state interests." (Plaintiffs' Opposition at 14:6-7 (citing San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1101 (9th Cir. 1998)).) However, Plaintiffs plead an as-applied, not

---

[2] The Ninth Circuit Court of Appeals has said:

> Although this circuit has adopted the doctrine of judicial estoppel, we have not yet determined the circumstances under which it will be applied. . . . The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted *by the court* in the earlier litigation; only in that situation, according to those circuits, is there a risk of inconsistent results and a threat to the integrity of the *judicial* process. . . . The minority view, in contrast, holds that the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing 'fast and loose' *with the court*. . . . In either case, the purpose of the doctrine is to protect the integrity of *the judicial process*.

Yanez v. U.S., 989 F.2d 323, 326 (9th Cir. 1993) (citing Morris v. California, 966 F.2d 448, 452-53 (9th Cir. 1991)) (emphases added).

[3] Judicial estoppel is inapplicable under both the majority and the minority rules, which are stated in footnote 2, supra.

9

facial, takings claim. (See FAC §§ 42-47.) Plaintiffs' allegations do not challenge the constitutionality of any law allowing municipalities to impose use conditions on property owners, only the particular way such conditions were imposed on them. Therefore, this argument fails.

For the foregoing reasons, Plaintiffs cannot maintain their takings claim. The Court GRANTS Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Second Claim.[4]

**D. Third Claim: Procedural Due Process**

Defendants argue that Plaintiffs' claim for procedural due process fails as a matter of law because Plaintiffs spoke at a hearing, met with City officials, and presented a report to the City Council. The Court rejects this argument.

"Procedural due process claims require (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003) (citing Hufford v. McEnaney, 249 F.3d 1142, 1150 (9th Cir. 2001)). The second element is informed by three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[4] This holding hinges on the Williamson County rule. The rule requires that parties seek compensation through state procedures and be denied that compensation before bringing federal takings claims. Although not yet overturned, this rule was recently called into question by the Supreme Court in San Remo Hotel, L.P. v. City & County of San Francisco, 125 S.Ct. 2491, 2508-10 (June 20, 2005). Chief Justice Rehnquist's concurring opinion states:

> It is not clear to me that Williamson County was correct in demanding that, once a government entity has reached a final decision with respect to a claim's property, the claimant must seek compensation in state court before bringing a federal takings claim in federal court. . . . [T]he Court has not explained why we should hand authority over federal takings claims to state courts, based simply on their relative familiarity with local land-use decisions and proceedings, while allowing plaintiffs to proceed directly to federal court in cases involving, for example, challenges to municipal land-use regulations based on the First Amendment. . . . In an appropriate case, I believe the Court should reconsider whether plaintiffs asserting a Fifth Amendment takings claim based on the final decision of a state or local government entity must first seek compensation in state courts.

San Remo Hotel, 125 S.Ct. at 2508-10 (2005) (Rehnquist, C.J., concurring).

10

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Regarding the first element, Defendants do not dispute that a constitutionally protected liberty or property interest is involved here. (See Defendants' Memorandum in Support of Motion at 4:17-6:11.) Regarding the second element, Defendants cite no authority showing that the facts alleged here necessarily constitute adequate procedural protections as a matter of law. Thus, the Court would need to apply the Mathews balancing test to determine whether the facts alleged constitute adequate procedural protections. To perform the Mathews test would require the Court to seek information outside the pleadings, which the Court declines to do.

Construed liberally, Plaintiffs' allegations present a viable claim. Therefore, the Court DENIES Defendants' motion with respect to Plaintiffs' Third Claim.

**E. Fourth Claim: Right to Free Speech and Right to Petition**

Defendants argue that Plaintiffs' free speech claim should be dismissed because "the conditions imposed were aimed at the secondary effects of the operation of the Limelight," rather than the content. (Defendants' Memorandum in Support of Motion at 9:19-20.) The Court rejects this argument.

The Supreme Court "has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986) (internal citations omitted). However, "so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." Id. at 47 (internal citations omitted). "[Z]oning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." Id. at 49. Such ordinances receive intermediate scrutiny, making it unlikely that plaintiffs asserting constitutional challenges will prevail. See U.S. v. O'Brien, 391 U.S. 367, 377 (1968); see also City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 427 (2002).

11

Contrary to Defendants' arguments, Plaintiffs' allegations indicate that the conditions imposed on The Limelight were aimed at the content of the flyers, not the secondary effects of The Limelight. Plaintiffs allege that Defendants "complained to plaintiffs about the content of their advertising material" (FAC ¶ 16) and that "[t]he City again expressed dislike for the content of the material" (FAC ¶ 25). Plaintiffs further allege that "[t]he City's restrictions, imposed with the knowledge that such restrictions would put the Limelight out of business, constitute an improper attempt to regulate plaintiffs' right to free speech." (FAC ¶ 59.) Taken as true, with all reasonable inferences drawn in Plaintiffs' favor, these factual allegations could show the conditions were aimed at curbing the content of the speech, not the effects of The Limelight.

Therefore, the Court finds Defendants' argument untenable and DENIES Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Fourth Claim.

**F. Fifth Claim: Estoppel**

Plaintiffs' Fifth Claim is for estoppel. Equitable estoppel "acts defensively only." See Peskin v. Phinney, 182 Cal. App. 2d 632, 636 (1960); see also Green v. Travelers Indemnity Co., 185 Cal. App. 3d 544, 555 (1986). It cannot be asserted as an independent claim. Promissory estoppel, however, may be used as an independent claim for restitution, damages, or specific relief. See Sinerton & Walberg Co. v. Inglewood-Los Angeles County Civil Center Authority, 40 Cal. App. 3d 98, 105 (1974). Plaintiffs do not state what type of estoppel they are attempting to assert. Therefore, the Court construes Plaintiffs' Fifth Claim for estoppel as one for promissory estoppel.

Promissory estoppel has been described as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Racine & Laramie, Ltd. v. Department of Parks & Recreation, 11 Cal. App. 4th 1026, 1034 (1992).

> The required elements for promissory estoppel in California are set forth in Thomson v. Int'l Alliance of Stage Employees, 232 Cal. App. 2d 446, 454 . . . . They are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must

12

be injured by his reliance.

Laks v. Coast Fed. Sav. & Loan Assn., 60 Cal. App. 3d 885, 890 (1976).

The Court finds that Plaintiffs' Complaint fails to allege the first element of promissory estoppel--namely, that there was a "promise clear and unambiguous in its terms." Plaintiffs' Complaint states: "Defendants' statements and conduct led plaintiffs to believe that The City would continue to encourage the vitality, existence, and operation of The Limelight." (FAC ¶ 65.) Even under liberal pleading standards, this statement fails to allege a "promise clear and unambiguous" by Defendants.

Therefore, the Court GRANTS Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Fifth Claim. Should Plaintiffs wish to pursue a promissory estoppel claim, they are granted leave to amend the claim. Plaintiffs may not raise other, defensive forms of estoppel as claims in their new complaint.

**G. Sixth and Seventh Claims: Intentional and Negligent Interference with Business Relations**

Plaintiffs contend that Defendants negligently and intentionally interfered with Plaintiffs' prospective economic advantage by hindering relationships between Big Sky and the owner of The Limelight's lot and between The Limelight and its patrons. The Court finds neither of these tort claims viable.

McNair is immune from liability for Plaintiffs' Sixth and Seventh Claims. Generally, a public employee is "not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." CAL. GOV'T CODE § 820.2. "Section 821.2, in turn, specifically designates licensing activities as discretionary," including the issuance or revocation of a permit. O'Hagan v. Board of Zoning Adjustment, 38 Cal. App. 3d 722, 725-26 (1974) (finding that a public employee was immune to tort action for revoking a use permit); see also CAL. GOV'T CODE § 821.2. Therefore, McNair's activities with respect to the permit are discretionary, and she has discretionary immunity.

Plaintiffs argue that, even if discretionary immunity applies, their Sixth and Seventh Claims

13

fall within an exception to this immunity. "Public officials performing discretionary functions are shielded from liability in 42 U.S.C. § 1983 actions for civil damages . . . only insofar as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Plaintiffs' Opposition at 19:18-20 (citing Conn v. Gabbert, 526 U.S. 286 (1999)).) The Court need not consider the merits of this argument with regard to Plaintiffs' Sixth and Seventh Claims, as Plaintiffs overlook the fact that this exception only applies to claims brought under § 1983.[5] Since neither the Sixth nor Seventh Claim is brought under § 1983, McNair is not subject to the exception noted by Plaintiffs. Therefore, McNair is immune from claims not arising out of § 1983, including the Sixth and Seventh Claims.[6]

As for the City, public entities are liable for tort only as provided by statute. CAL. GOV'T CODE § 815; Trinkle v. California State Lottery, 71 Cal. App. 4th 1198, 1202 (1999). Plaintiffs argue that the City is vicariously liable through McNair. Yet, because McNair is immune from suit, even a statutory enunciation of vicarious liability could not implicate the City. As Plaintiffs have found no other statutory basis for their Sixth and Seventh Claims against the City, these claims are not viable.

Therefore, the Court GRANTS Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Sixth and Seventh Claims. The Court also grants Plaintiffs leave to amend their Sixth and Seventh Claims against the City to the extent that they can provide a statutory basis for the City's liability.

**H. Eighth Claim: Unfair Competition**

Plaintiffs claim that Defendants' conduct "constituted an unlawful and unfair business act or

---

[5] Defendants could also argue that this exception does not apply to McNair such that she is also not liable for Plaintiffs' First, Second, Third, and Fourth Claims. However, to determine that McNair's conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known" would either require the Court to forego making all reasonable inferences for Plaintiffs or to overstep the bounds of the pleadings, which the Court declines to do. Therefore, for the purposes of this motion, the Court finds that the exception applies such that McNair does not have immunity with respect to Plaintiffs' First, Second, Third, and Fourth Claims. Therefore, the Court will not dismiss or grant judgment on all claims against McNair at this time.

[6] Likewise, McNair is immune from suit in the Eighth Claim.

14

practice within the meaning of California Business and Professions Code section 17200." (FAC ¶ 85.) Defendants argue that they are not susceptible to suit under California's unfair competition laws ("UCL"), CAL. BUS. & PROF. CODE § 17200 et seq. The Court accepts this argument.

The UCL applies to "persons," as defined therein. See CAL. BUS. & PROF. CODE § 17200 et seq. Public entities are not included as "persons" under the UCL. CAL. BUS. & PROF. CODE § 17201; People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd., 125 Cal. App. 4th 871, 881 (2005) ("whether a public entity can be sued under the UCL as a 'person' is readily answered [in the negative] by reference to the plain language of section 17201"). Therefore, the UCL does not apply to the City. As for McNair, she is immune to suit, as described previously. (See, supra, Part IV.G.) Thus, neither Defendant is susceptible to suit.

The Court GRANTS Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Eighth Claim.

**I. Personal Claims of Andrew Nahas and Kareem Nahas**

Andrew Nahas and Kareem Nahas are parties to each of the foregoing eight claims. Defendants argue that, because Andrew Nahas and Kareem Nahas have not alleged injuries independent of those suffered by Big Sky, they may not bring personal claims against Defendants. The Court accepts this argument.

The general and uniform rule from Erlich v. Glasner, 418 F.2d 226, 228 (9th Cir. 1969), relied on by both parties, is that "a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his capital stock." However, "[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530 (1946). "[A] stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong." Id.

Plaintiffs' Complaint alleges no injuries to Andrew Nahas and Kareem Nahas independent of those to Big Sky. Therefore, the Court GRANTS Defendants' motion for judgment on the pleadings with respect to all claims by Andrew Nahas and Kareem Nahas. The Court also grants Plaintiffs leave to amend those claims.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS, without leave to amend, Defendants' motion with respect to Plaintiffs' Second and Eighth Claims, Plaintiffs' Sixth and Seventh Claims against McNair, and Plaintiffs' substantive due process claim in their First Claim; the Court DENIES Defendants' motion with respect to Plaintiffs' Third and Fourth Claims; and, the Court GRANTS, with leave to amend, Defendants' motion with respect to Plaintiffs' Fifth Claim, Plaintiffs' equal protection claim in their First Claim, Plaintiffs' Sixth and Seventh Claims against the City, and all claims by Kareem Nahas and Andrew Nahas. Should Plaintiffs choose to amend, they shall file their Second Amended Complaint on or before August 26, 2005.

Dated: July 19, 2005

/s/James Ware
JAMES WARE
United States District Judge

03cv5057jop

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Eric J Sidebotham eric.sidebotham@verizon.net
Louis A. Leone lleone@stubbsleone.com
Patricia De Fonte Patricia.DeFonte@ibslaw.com

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:**

Michael D. Martello
Office of the City Attorney
500 Castro Street
Mountain View, CA  94039-7540

**Dated:  July 19, 2005**                                        **Richard W. Wieking, Clerk**

                                                                 **By:/s/JWchambers**
                                                                         **Ronald L. Davis**
                                                                         **Courtroom Deputy**