1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                             SAN JOSE DIVISION

9

10  Kareen Nahas, et al.,                    NO. C 03-05057 JW

11              Plaintiffs,           **ORDER GRANTING DEFENDANTS'**
                                      **MOTION TO DISMISS; CONTINUING CASE**
        v.                            **MANAGEMENT CONFERENCE**
12
    City of Mountain View, et al.,
13
              Defendants.
14  _____/

15                          **I.  INTRODUCTION**

16          Plaintiffs ("Plaintiffs") in this case are Big Sky Entertainment, Inc. ("Big Sky") and Kareem

17  Nahas and Andrew Nahas, shareholders in Big Sky.  Defendants ("Defendants") are the City of

18  Mountain View ("the City") and Whitney McNair ("McNair"), the City's Zoning Administrator.  In

19  2001, Plaintiffs purchased The Limelight, a nightclub in downtown Mountain View.  Plaintiffs' lawsuit

20  arises out of the imposition of new permit conditions upon The Limelight, which allegedly put it out of

21  business.  Plaintiffs' first amended complaint contained claims for civil rights violations and torts.

22  Defendants previously filed a motion for judgment on the pleadings, which the Court granted in part

23  and denied in part.  Thereafter, Plaintiffs filed a second amended complaint, which now includes six

24  claims: (1) violation of equal protection rights; (2) violation of procedural due process; (3) violation

25  of right to free speech; (4) promissory estoppel; (5) intentional interference with business relations/

26  prospective economic advantage; and (6) negligent interference with business relations/ prospective

27  economic advantage.  Presently before the Court is Defendants' Motion to Dismiss the first, second,

28  fourth, fifth, and sixth claims for failure to state a claim upon which may be granted ("Motion")

*United States District Court*
For the Northern District of California

1   (Docket Item No. 157). The Motion was scheduled for a hearing on October 17, 2005. However, the

2   Court finds it appropriate to take the motion under submission without oral argument pursuant to Civil

3   Local Rule 7-1(b). For the reasons set forth below, the Court grants Defendants' Motion.

## II. BACKGROUND

5       In December 2001, Plaintiffs purchased The Limelight, a nightclub on Castro Street in

6   downtown Mountain View. (Second Amended Complaint, hereinafter "SAC," Docket Item No. 155, ¶

7   10.) At the time of the purchase, and prior thereto, The Limelight served patrons 18 years old and

8   older seven days a week, except select Sundays when it had "youth nights" for patrons between ages

9   14 and 17. (SAC ¶ 10.) At that time, The Limelight's Community/Provisional Use Permit did not

10  restrict hours of operation or patrons' ages. (SAC ¶ 12.) This Use Permit was transferred to Plaintiffs

11  upon purchase of the Limelight. (SAC ¶ 12.) Prior to their purchase, Plaintiffs met with the City and

12  The Limelight's then owner "to learn of any issues The City might have with the club's operations."

13  (SAC ¶ 13.) The City affirmatively represented to Plaintiffs that there were no problems with the then

14  current operations of the Limelight, and expressly agreed that Plaintiffs could continue to operate the

15  Limelight without any restrictions on the age of the Limelight's patrons or limitation of its hours or

16  days of operation. (SAC ¶ 13.) As a result, Plaintiffs believed that, if they purchased The Limelight,

17  they could continue operating it under the same conditions. (SAC ¶ 14.) In addition to purchasing the

18  nightclub, Plaintiffs executed a 10-year lease for the property, making them responsible for rent and

19  property taxes totaling more than $2.5 million. (SAC ¶ 15.) Plaintiffs

20  Kareem Nahas and Andrew Nahas personally guaranteed the payment of the property tax. (SAC ¶ 15.)

21      Plaintiffs operated the Limelight the same way it was operated by its predecessor and without

22  incident or concern from the City until about June 2002. (SAC ¶ 16.) In mid-2002, a nearby resident

23  began complaining to the City's Zoning Administrator, Defendant McNair, about The Limelight's noise

24  and about disruptive conduct of people in the public parking lot adjacent to The Limelight. (SAC ¶

25  16.) Following these complaints, the City began a review of the conditions of operation of the

26  Limelight. (SAC ¶ 16.) Additionally, the City itself complained that The Limelight's advertising

27

28                                                    2

1   materials, which contained images of scantily clad women, "did not promote a 'family friendly'

2   environment."  (SAC ¶ 16.)

3       Around October 2002, McNair imposed additional conditions upon The Limelight, requiring

4   its patrons to be 21 years old or older, eliminating its patrons' "in-and-out" privileges, and restricting

5   its evening operations to Thursday, Friday, and Saturday.  (SAC ¶ 17.)  There was no evidence,

6   however, that the allegedly disruptive people in the parking lot were in fact patrons of The Limelight

7   or that they were under 21 years old.[1]  (SAC ¶ 17.)

8       Plaintiffs appealed these additional conditions.  (SAC ¶ 18.)  The City Council heard

9   Plaintiffs' appeal on December 10, 2002.  (SAC ¶ 18.)  At this hearing "Plaintiffs were [initially] only

10  allowed ten minutes to speak.  Thereafter, plaintiffs were only allowed three minutes each to speak."

11  (SAC ¶ 18.)  Plaintiffs offered to place security guards in the parking lot, provide the City Council

12  with a sound report, soundproof the building, and offered to pay overtime to City's police officers

13  who might have to come out to the Limelight.  (SAC ¶ 18.)  Despite these accommodations and despite

14  Plaintiffs' statements that the additional conditions would cause The Limelight to go out of business,

15  the City upheld the additional conditions and set a further hearing for January 22, 2003.  (SAC ¶ 18.)

16      After the December hearing, Plaintiffs served the City Attorney Michael Martello with a

17  petition for writ of mandamus seeking to stay enforcement of the new conditions.  (SAC ¶ 19.)  The

18  City attorney asked Plaintiffs to try to resolve the matter without litigation and agreed to stay

19  enforcement until the end of the year to allow some time for negotiations.  (SAC ¶ 19.)  During these

20  negotiations, the parties discussed the possibility of finding a new buyer for The Limelight.  (SAC ¶

21  20.)  In February 2003, Plaintiffs found a potential buyer, who was led by the City to believe that the

22  new conditions would be rescinded.  (SAC ¶ 21.)  The potential buyer made an offer and escrow

23  opened but, in April 2003, McNair refused to rescind the new conditions.  (SAC ¶ 22.)  Instead,

24  McNair imposed yet additional costly conditions; for example, McNair required the club to close at

25

26  _____

27      [1] Notably, the parking lot that adjoins The Limelight also adjoins several other businesses.
    (SAC ¶ 16.)

28                                                3

United States District Court
For the Northern District of California

1:00 a.m. instead of 2:00 a.m.  (SAC ¶ 22.)  Consequently, the buyer decided not to finalize the purchase of The Limelight.  (SAC ¶ 23.)  Plaintiffs have been unable to locate another buyer.  (SAC ¶ 23.)

Plaintiffs have continued to make efforts to resolve their dispute with the City.  (SAC ¶¶ 24-25.)  At a meeting with the City on May 12, 2003, the City expressed concerns about the content of Plaintiffs' advertising material and the disruptiveness of the people in the parking lot.  (SAC ¶ 25.)  The City suggested that "the property would serve the community better as a restaurant."  (SAC ¶ 25.)  Plaintiffs submitted a report to the City, which sought to address the City's concerns by proposing additional security, sound proofing, etc.  (SAC ¶ 26.)  Plaintiffs agreed to virtually all of the City's new conditions.  (SAC ¶ 26.)  Plaintiffs asked, however, that The Limelight be allowed to continue serving patrons 18 years old and older, to continue staying open until 2 a.m., and to continue having "youth nights" on Sundays.  (SAC ¶ 26.)  Plaintiffs suggested that these allowances be made for a probationary period during which Plaintiffs would prove that they could operate The Limelight without disturbances.  (SAC ¶ 26.)  Despite Plaintiffs' reiteration that imposition of all the new conditions would put The Limelight out of business, McNair upheld them.  (SAC ¶¶ 26-27.)  McNair attached a copy of the Petition for Writ of Mandate that Plaintiffs earlier served on the City attorney.  (SAC ¶ 27.)

At a final hearing on May 27, 2003, the City upheld the new conditions.  (SAC ¶ 28.)  Plaintiffs then operated The Limelight in compliance therewith.  (SAC ¶ 29.)  However, the club lost most of its patrons and was "forced to close down in July, 2003."  (SAC ¶ 29.)

Since February 2003, Plaintiffs have been unable to pay rent on the property and are now defendants in an unlawful detainer action.  (SAC ¶ 30.)  Additionally, Plaintiffs allegedly have suffered "injury to their business goodwill and reputation" and loss of business opportunity.  (SAC ¶¶ 31-34.)  Plaintiffs allege that subsequent attempts to open a nightclub on a property in Burlingame, California, have been frustrated because the City of Mountain View persuaded City of Burlingame that Plaintiffs did not properly follow the conditions of their permit.  (SAC ¶¶ 31-34.)  Allegedly, the

4

landlord of the Burlingame property is suing Plaintiffs as a result.  (SAC ¶ 35.)

On November 14, 2003, Plaintiffs initiated the instant suit, arising out of the imposition of new permit conditions upon The Limelight, which allegedly put it out of business.  Plaintiffs' First Amended Complaint ("FAC") alleged claims for civil rights violations and torts.  Thereafter, Defendants filed a motion for judgment on the pleadings, which the Court granted in part and denied in part. ("July 19, 2005 Order") (Docket Item No. 147.)  Plaintiffs filed a Second Amended Complaint ("SAC") (Docket Item No. 155), which now includes six claims: (1) violation of equal protection rights; (2) violation of procedural due process; (3) violation of right to free speech; (4) promissory estoppel; (5) intentional interference with business relations/ prospective economic advantage; and (6) negligent interference with business relations/ prospective economic advantage.

Presently before the Court is Defendants' Motion to Dismiss the first, second, fourth, fifth, and sixth claims for failure to state a claim upon which may be granted ("Motion").  Based on the arguments advanced by counsel in their briefs, the Court grants Defendants' Motion.

### III.  STANDARDS

**Motion to Dismiss under Rule 12(b)(6)**

The strict standard for granting a motion to dismiss under Rule 12(b)(6) is set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). A motion to dismiss under Rule 12(b)(6) must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> at 45-46. As the Ninth Circuit observed, a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." <u>Gilligan v. Jamco Develop. Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997).

In ruling on a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 164 (1993); <u>Pareto v. FDIC</u>, 139 F.3d 696, 699 (9th Cir. 1998). However, the court need not accept as true conclusionary allegations or legal characterizations. <u>Pareto</u>, 139 F.3d at 699. Also, the court need not accept unreasonable

United States District Court
For the Northern District of California

1   inferences or unwarranted deductions of fact. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988

2   (9th Cir. 2001).

3                                              **IV.  DISCUSSION**

4   **A.  Plaintiffs' Equal Protection Claims (First Cause of Action)**

5           Defendants argue that Plaintiffs cannot maintain an equal protection claim because Plaintiffs

6   fail to allege that Defendants treated them differently from others who were similarly situated. The

7   Court agrees with Defendants.

8           As articulated in the Court's July 19, 2005 Order, the Supreme Court has "recognized

9   successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has

10  been intentionally treated differently from others similarly situated and that there is no rational basis

11  for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). In

12  <u>Olech</u>, the complaint was that "the Village *intentionally demanded* a 33-foot easement as a condition

13  of connecting her property to the municipal water supply *where the Village required* only a 15- foot

14  easement from *other similarly situated property owners*." <u>Id</u>. at 565 (emphasis added).

15          Plaintiffs argue that they have sufficiently alleged that Defendants deliberately treated similarly

16  situated businesses and/or individuals differently. Specifically, Plaintiffs argue that they have been

17  treated differently because, *inter alia*, (i) Defendants limited the hours of operations to Thursday,

18  Friday and Saturday nights (SAC ¶ 17); (ii) Defendants restricted patrons of the Limelight to 21 years

19  of age or older (SAC ¶ 17); and (iii) Defendants required the Limelight to close at 1:00 a.m. instead of

20  2:00 a.m. (SAC ¶ 22). (<u>See</u> Opp'n at 8:7-13.) Plaintiffs allege that these additional restrictions were

21  first imposed in October 2002 as a result of complaints regarding the behavior of persons in a public

22  parking lot. (SAC ¶ 16). According to Plaintiffs, these restrictions were imposed without any evidence

23  that the persons complained of were in fact patrons of the Limelight, as opposed to any other nearby

24  establishment. (Opp'n at 10:6-7.)

25          Plaintiffs argue in a footnote to their Opposition that "Limelight was subjected to custom

26  restrictions which were not imposed on any of the nightlife establishments located in Mountain View

27

28                                                    6

United States District Court

For the Northern District of California

(see SAC, ¶ 16).” (Opp'n at 10 n.16.) This allegation, however, does not appear anywhere in the SAC.  Instead, Paragraph 16 of the SAC states that:

> Following these complaints, the City of Mountain View began a review of the conditions of operation of the Limelight. [A resident] made allegations about the level of noise coming from the Limelight sound system and the conduct of persons in the parking lot located behind the Limelight. That parking lot is a public parking lot which is owned by the City of Mountain View and surrounded by several other businesses.

Even when liberally construing the SAC and making all reasonable inferences in favor of the Plaintiffs, the Court finds that Plaintiffs have not sufficiently pled that Defendants have treated them differently from others who were similarly situated (e.g., other nightlife establishments in Mountain View with similar complaints about the noise and conduct of persons in the public parking lot); that the difference in treatment was intentional; and that there was no rational basis for the difference. See Olech, 528 U.S. at 564-65.

Based on the claim as alleged, Plaintiffs have not pled a cause of action for equal protection. Thus, the Court grants Defendants' Motion with respect to Plaintiffs' First Cause of Action, with leave to amend.  If Plaintiffs wish to pursue this cause of action, Plaintiffs must allege that they were intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

**B.  Plaintiffs' Substantive Due Process Claims (Second Cause of Action)**

Defendants argue that Plaintiffs cannot maintain a substantive due process claim because the Court dismissed this claim without leave to amend. Plaintiffs acknowledge that the Court dismissed Plaintiffs' substantive due process claims with prejudice. In Plaintiffs' Opposition, Plaintiffs explain that they erroneously labeled their procedural due process claim as a substantive due process claim. The Court grants Defendants' Motion with respect to Plaintiffs' Second Cause of Action with leave to amend to correct Plaintiffs' clerical error.

**C.  Plaintiffs' Promissory Estoppel Claims (Fourth Cause of Action)**

Defendants argue that Plaintiffs cannot maintain a claim for promissory estoppel because the SAC fails to allege any representation that could create an estoppel. The Court agrees.  Four elements

United States District Court

For the Northern District of California

are required to maintain a promissory estoppel claim in California:

> (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.

<u>Laks v. Coast Fed. Sav. & Loan Assn.</u>, 60 Cal. App. 3d 885, 890 (1976). In the Court's previous Order, the Court found that Plaintiffs' FAC failed to allege the first element of promissory estoppel (i.e., that there was a "promise clear and unambiguous in its terms"). (July 19, 2005 Order at 13:3-4.) Plaintiffs alleged the following in their FAC:

> Prior to purchasing The Limelight, plaintiffs met with representatives of The City and defendant, McNair. The City did not mention any restrictions on the age of The Limelight's patrons or its hours of operation. The City also did not discuss changing the 1995 permit to include such age restrictions or limits on The Limelight's days of operation restrictions. The City represented to plaintiffs that there were no problems with the then current operations of The Limelight.

FAC ¶ 65. Plaintiffs further alleged in their FAC that "Defendants' statements and conduct led plaintiffs to believe that The City would continue to encourage the vitality, existence and operation of The Limelight." FAC ¶ 66. In Plaintiffs' SAC, Plaintiffs now allege the following:

> Defendants made at least *two express promises* to Plaintiffs in the context of this case. The first promise was made prior to purchasing the Limelight, when Plaintiffs met with representatives of the City of Mountain View and Defendant McNair. The City of Mountain View expressly agreed at that meeting that Plaintiffs could continue to operate the Limelight without any restrictions on the age of the Limelight's patrons or limitation of its hours or days of operation. The City of Mountain View *expressly promised* that Plaintiffs could continue to operate the Limelight the same way it was operated by the then owner, Eric DeBlasi. The City of Mountain View represented to Plaintiffs that there were no problems with the then current operations of the Limelight. The second promise was made by Michael Martello, Esquire, the City Attorney for the Defendant City of Mountain View. Martello *promised* Plaintiffs [if] that they were to withhold filing of their Writ of Mandate that he would work with Plaintiffs to resolve this matter without the need to resort to litigation.

FAC ¶ 62.

Under the liberal pleading standard, the Court again finds that Plaintiffs' allegations are not sufficiently clear and unambiguous promises on the part of City and/or City officials. With respect to the first statement, the Plaintiffs do not allege that the City expressly promised that Plaintiffs could operate the Limelight without any restrictions in the future regardless of problems experienced by

United States District Court

For the Northern District of California

neighbors. The City only represented that there were no problems with the then current operations of the Limelight and that Plaintiffs could continue to operate the Limelight the same way it was operated by the then owner. Moreover, even if the City's statement was a clear and unambiguous promise, Plaintiffs' reliance on such a statement would not be reasonable. The second statement amounts to a promise that the City "would work with Plaintiffs to resolve this matter." The statement lacks any clarity whatsoever. Plaintiffs fail to plead, for example, how the City was to "work with Plaintiffs"; when was the City to "work with Plaintiffs"; and what permit conditions would result from the City working with Plaintiffs. In the absence of any of these details, Plaintiffs' reliance on the alleged promise would not be reasonable.

Additionally, as a general rule, a public entity may not be estopped by the conduct of its officers or employees. See Lundeen Coatings Corp. v. Department of Water & Power, 232 Cal.App.3d 816, 830 (1991) (citing Cal. Cigarette Concessions v. City of L. A., 350 P.2d 715, 718 (1960)). In limited circumstances, promissory estoppel may be invoked against a governmental body where it would not operate to defeat any strong public policy or result in the indirect enforcement of an illegal contract. Hilltop Properties v. State of California, 233 Cal.App.2d 349, 365 (citing County of San Diego v. California Water & Tel. Co., 30 Cal.2d 817, 826 (1947)). To allow Plaintiffs' to invoke promissory estoppel against the City under the facts of this case would undoubtedly undermine the administrative efficiency of a city's permit scheme.

In the Court's July 19, 2005 Order, the Court granted Plaintiffs leave to amend their FAC to allege a promise that was clear and unambiguous in its terms. In Plaintiffs' SAC, Plaintiffs have again failed to allege facts to support their promissory estoppel claim. Thus, Court grants Defendants' Motion with respect to Plaintiffs' Fourth Cause of Action with prejudice.

//

**D. Plaintiffs' Intentional and Negligent Interference With Business Relations/ Prospective Economic Advantage Claims (Fifth and Sixth Causes of Action)**

Plaintiffs' interference with business relations and prospective economic advantage claims

1  are based on the City's alleged "interfer[ence] with the contracts Plaintiffs had with various merchants

2  for the operation of the Limelight, the owner of the property, Helen Wang, and the Burlingame

3  landlord (SAC ¶ 70.) and the City's alleged "interfer[ence] with the prospective economic advantage

4  of Plaintiffs. . . by [] limiting the Limelight's patrons, with the knowledge that such limitations would

5  force the Limelight to shut down." (SAC ¶ 71.)

6      Defendants argue that Plaintiffs cannot maintain causes of action for intentional and negligent

7  interference with business relations/ prospective economic advantage because there is no statutory

8  basis for the claims.  The Court agrees.

9      The California Tort Claims Act (Cal. Gov't Code §§ 810, *et seq*.) governs public entity

10 liability and restricts governmental liability to certain circumstances. Public entities are liable for tort

11 only as provided by statute. See Cal. Gov't Code § 815; Trinkle v. California State Lottery, 71 Cal.

12 App. 4th 1198, 1202 (1999). Plaintiffs argue that they have sufficiently pled at least three statutory

13 bases for the claims[2]: 42 U.S.C. § 1983 (See SAC ¶¶ 72 & 78.); Cal. Civ. Code §§ 51, *et seq*. (See

14 SAC ¶¶ 69 & 77.); and Cal. Civ. Code § 44 (See SAC ¶¶ 32-35.) The Court will address Plaintiffs'

15 arguments in turn.

16     **1. 42 U.S.C. § 1983**

17     Plaintiffs argue that 42 U.S.C. § 1983 provide a basis for their interference with business

18 relations/ prospective economic advantage claims. The Court rejects Plaintiffs' argument.

19     Section 1983 governs a civil action for deprivation of civil rights. Section 1983 provides, in

20 pertinent part:

21     Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any
       State. . . subjects, or causes to be subjected, any citizen of the United States or other person
22     within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
       secured by the Constitution and laws, shall be liable to the party injured in an action. . . ."

23

24 _____

25     [2] The Court notes that in Plaintiffs' Opposition, Plaintiffs labeled their interference with
   business relations/ prospective economic advantage as the Sixth and Seventh Causes of Action.
26 (Opp'n at 14-16.) In the FAC, the interference claims are the Sixth and Seventh Causes of Action.
   However, in the SAC, these interference claims are the Fifth and Sixth Causes of Action. The Court
27 will construe Plaintiffs' arguments as applying to the Fifth and Sixth Causes of Action.

28                                    10

**United States District Court**
For the Northern District of California

Thus, Section 1983 does not address interference with business relations/ prospective economic advantage claims, but rather civil rights claims. The Court finds that Section 1983 does not provide Plaintiffs with a statutory basis for asserting their Fifth and Sixth Causes of Action.[3]

**2. Cal. Civ. Code §§ 51, *et seq*.**

Plaintiffs argue that Cal. Civ. Code §§ 51(b) and 52(b), the so-called Unruh Civil Rights Act, provide a statutory basis for their interference with business relations/ prospective economic advantage claims. Section 51(b) provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Section 52(a) provides, in pertinent part, that "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51. . . is liable for each and every offense" for damages. The Act is this state's safeguard against arbitrary discrimination in places of public accommodation. Isbister v. Boys' Club of Santa Cruz, Inc., 707 P.2d 212, 214 (1985).

Contrary to Plaintiffs' assertion, the Unruh Civil Rights Act does not provide Plaintiffs with a statutory basis for their interference with business relations/ prospective economic advantage claims. The Act prevents businesses from discriminating against the public for invidious reasons like sex, religion, age, and race. Plaintiffs here are the business. Although the courts have interpreted the Act's coverage "in the broadest sense reasonably possible," Burks v. Poppy Construction Co., 370 P.2d 313, 316 (1962), the Court does not find that this Act applies to the facts as alleged. Thus, Cal. Civ. Code §§ 51, *et seq*. does not provide Plaintiffs with a statutory basis for asserting their Fifth and Sixth

---

[3] The Court notes that Plaintiffs' SAC also alleges that "Defendants' conduct violated Plaintiffs' rights under the First, Fifth and Fourteenth Amendments to the United States Constitution." (SAC ¶¶ 72 & 78.) In Plaintiffs' Opposition, Plaintiffs do not make any arguments as to how the alleged constitutional violations would provide a statutory basis for asserting their interference with business relations/ prospective economic advantage claims. The Court cannot surmise how violations under the First, Fifth and Fourteenth Amendments can provide a basis for Plaintiffs' interference claims.

Causes of Action.

### 3. Cal. Civ. Code §§ 44, *et seq.*

Plaintiffs argue that Cal. Civ. Code § 44, *et seq*. provides a statutory basis for their interference with business relations/ prospective economic advantage claims. Section 44 states: "Defamation is effected by either of the following: (a) Libel. (b) Slander." Section 45 defines libel[4], and section 46 defines slander.[5] The Court finds that Cal. Civ. Code §§ 44, *et seq*. does not provide Plaintiffs with a statutory basis for asserting their interference with business relations/ prospective economic advantage claims. Moreover, even if the Court were to liberally construe Plaintiffs' cause of action for interference with business relations/ prospective economic advantage claims against the City as one for defamation, Plaintiffs fail to allege, *inter alia*, that the City's comments to the City of Burlingame were "false and unprivileged publication[s]." See Cal. Civ. Code § 45-46.

### 4. Leave to Amend

As discussed above, Plaintiffs have not pled a cause of action for intentional or negligent interference with business relations/ prospective economic advantage. Thus, the Court grants Defendants' Motion with respect to Plaintiffs' Fifth and Sixth Causes of Action, with leave to amend their claims against the City.

---

[4] Section 45 provides:
Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

[5] Section 46 provides:
Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:
   1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
   2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;
   3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;
   4. Imputes to him impotence or a want of chastity; or
   5. Which, by natural consequence, causes actual damage.

1   Although the Court is allowing Plaintiffs leave to amend their intentional and negligent

2   interference with business relations/ prospective economic advantage claims, the Court reminds

3   Plaintiffs of their obligations under Rule 11, Fed.R.Civ.P.  If Plaintiffs elect to amend the claims,  they

4   must provide a statutory basis for such claims.[6] See Cal. Gov't Code § 815; see also Legislative

5   Committed Comment to Cal. Gov't Code § 815 (stating that "there is no liability in the absence of a

6   statute declaring such liability" and providing reference to statutory provisions for liability of

7   governmental entities).  Moreover, if Plaintiffs pursue their interference with business relations/

8   prospective economic advantage claims, Plaintiffs must plead every fact material to the existence of

9   City's statutory liability with particularity. See Lopez v. Southern Cal. Rapid Transit Dist., 710 P.2d

10  907, 916 (1985). The City's duty cannot be alleged "simply by stating, 'defendant had a duty under the

11  law'" since such an allegation is a conclusion of law and not an allegation of fact. Zuniga v. Housing

12  Authority, 41 Cal.App. 4th 82, 96 (1995).

13  **E.  Claims against McNair for Intentional and Negligent Interference With Business Relations**/

14  **Prospective Economic Advantage**

15  Defendants argue that Plaintiffs cannot maintain claims against McNair for intentional and

16  negligent interference with business relations/ prospective economic advantage because those claims

17  were dismissed without leave to amend in the Court's July 19, 2005 Order. The Court agrees.

18  Thus, the Court grants Defendants' Motion with respect to Plaintiffs' Fifth and Sixth Causes of

19  Action against McNair.

20  **F.  Personal Claims of Andrew Nahas and Kareem Nahas**

21  Defendants argue that Plaintiffs Andrew Nahas and Kareem Nahas cannot maintain any of the

22  six causes of action against Defendants because Plaintiffs Andrew and Kareem Nahas have not alleged

23  injuries independent to those of Plaintiff Big Sky.

24  Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a

25  _____

26  [6] Although not cited by the parties, the Court notes Plaintiffs' intentional and negligent
    interference with business relations/ prospective economic advantage might be precluded under Cal.

27  Gov't Code § 818.4.

28  13

United States District Court

For the Northern District of California

1   third person to the corporation on the theory that such wrong devalued his capital stock since the

2   wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation

3   and affects all stockholders alike. See Erlich v. Glasner, 418 F.2d 226, 228 (9th Cir. 1969) and Jones

4   v. H. F. Ahmanson & Co., 1 Cal.3d 93, 107 (1969). However, as articulated in the Court's July 19,

5   2005 Order, if the injury is one to the plaintiff as a stockholder and to him individually, and not to the

6   corporation, as where the action is based on a contract to which he is a party, or on a right belonging

7   severally to him, or on a fraud affecting him directly, it is an individual action." (July 19, 2005 Order

8   at 15:21-24 (quoting Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530 (1946)).) In Sutter, the

9   plaintiff alleged that he was induced by the defendants' fraud to abandon his own petroleum

10  development projects and organize and invest in a corporation to take over an oil and gas lease.

11  Sutter, 28 Cal. 2d 527. The court found that plaintiff had an individual action because the defendant's

12  fraud rendered worthless the stock in the new corporation. Sutter, 28 Cal. 2d 530-31.

13          Here, the SAC refers to Plaintiffs in the collective. For instance, the SAC alleges that

14  "Plaintiffs purchased a business located at 228 Castro Street" (SAC ¶ 10) and "Plaintiffs executed a

15  document entitled Lease Guarantee" (SAC ¶ 15). The SAC also alleges that "the owner of the

16  property, Helen Wang, filed an unlawful detainer action against *Plaintiffs* seeking damages in the

17  amount of unpaid rent." (SAC ¶ 30 (emphasis added).) However, the FAC alleges that "the owner of

18  the property, Helen Wang, filed an unlawful detainer action against *plaintiff*, BIG SKY, seeking

19  damages in the amount of unpaid rent." (FAC ¶ 30 (emphasis added).) The Court also notes that in the

20  unlawful detainer action in state court, Helen Wang sued Big Sky only, not the individual Defendants.

21  (Decl. of Louis A. Leone in Supp. of Req. for Judicial Notice of Ct. Records re Defs.' Mot. to

22  Dismiss Pls' Second Am. Compl., Ex. D.) (Docket Item No. 159.) It is unclear from the SAC whether

23  Kareem Nahas and Andrew Nahas are suing in their individual capacity, as shareholders of Big Sky,

24  or both in each of the six claims. For instance, in Plaintiffs' First Amendment claim (Third Cause of

25  Action), the SAC alleges that "[t]he City of Mountain View's restrictions, imposed with the

26  knowledge that such restrictions would put the Limelight out of business, constitute an improper

27

28                                                    14

1  attempt to regulate *Plaintiffs'* right to free speech under the First Amendment." (SAC ¶ 55 (emphasis

2  added)).

3      Adding to the ambiguity of the SAC is Plaintiffs' lax use of the collective. For example, as

4  discussed in the preceding section, the SAC refers to Defendants in the collective in the Fifth and Sixth

5  Cause of Action for interference with business relations/ prospective economic advantage, even

6  though the Court's July 19, 2005 Order dismissed claims against Defendant McNair without leave to

7  amend.

8      In each of the six causes of action, the SAC only alleges that "Plaintiffs Kareem Nahas and

9  Andrew Nahas, were also directly and individually injured in an amount not yet ascertained,

10 according to proof at the time of trial." (See SAC ¶¶ 41, 52, 60, 67, 75 & 82.) If the sole purchaser of

11 the Limelight and lessor was Big Sky, Kareem Nahas and Andrew Nahas must allege how their

12 obligation in "personally guaranteed performance under the lease" provides them with a severable

13 right for the six causes of action.

14     Therefore, the Court grants Defendants' Motion with respect to all claims by Plaintiffs Andrew

15 Nahas and Kareem Nahas, with leave to amend.

16                              **V. CONCLUSION**

17     For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss, with

18 prejudice, with respect to Plaintiffs' Fourth Cause of Action (Promissory Estoppel claim) against all

19 Defendants, and Plaintiffs' Fifth and Sixth Causes of Action (Intentional and Negligent Interference

20 With Business Relations/ Prospective Economic Advantage claims) against McNair.

21     The Court GRANTS, Defendants' motion, with leave to amend, with respect to Plaintiffs' First

22 Cause of Action (Equal Protection claim), Second Cause of Action (Substantive Due Process claims),

23 Fifth and Sixth Causes of Action (Intentional and Negligent Interference With Business Relations/

24 Prospective Economic Advantage claims) against the City, and all claims by Kareem Nahas and

25 Andrew Nahas.

26     Plaintiffs shall file a Third Amended Complaint in strict compliance with the terms of this

27

28                                   15

1  Order on or before November 8, 2005.

2       The case management conference scheduled for October 31, 2005, is continued to December 5,

3  2005.  The parties shall file a joint case management statement no later than November 22, 2005.

4  Dated: October 24, 2005

   03cv5057sac

5                               JAMES WARE
                             United States District Judge

**United States District Court**
For the Northern District of California

16

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Eric J Sidebotham eric.sidebotham@verizon.net
Louis A. Leone lleone@stubbsleone.com
Patricia  De Fonte Patricia.DeFonte@ibslaw.com

Michael D. Martello
Office of the City Attorney
500 Castro Street
Mountain View, CA  94039-7540

**Dated:  October 24, 2005**                              **Richard W. Wieking, Clerk**

                                                          **By:   /s/JW Chambers**
                                                               **Ronald L. Davis**
                                                               **Courtroom Deputy**

United States District Court

For the Northern District of California

17